## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| SHARKNINJA OPERATING LLC,<br><br>        Plaintiff,<br><br>v.<br><br>TRISTAR PRODUCTS, INC.,<br><br>    and<br><br>EMERIL LAGASSE,<br><br>        Defendants. | Civil Action No. 19-cv-24114<br><br>JURY TRIAL DEMANDED |

## <u>COMPLAINT</u>

1.      Plaintiff SharkNinja Operating LLC ("SharkNinja" or "Plaintiff"), for its Complaint for Patent Infringement and Demand for Jury Trial against Defendants Tristar Products, Inc. ("Tristar") and Emeril Lagasse ("Mr. Lagasse") (collectively, "Defendants"), states and alleges as follows:

### NATURE OF ACTION

2.      This is a civil action arising out of Defendants' patent infringement in violation of the Patent Laws of the United States, 35 U.S.C. §§ 271 and 281–285.

### THE PARTIES

3.      Plaintiff SharkNinja Operating LLC is a limited liability company organized and existing under the laws of Delaware, having a principal place of business at 89 A Street, Needham, Massachusetts 02494.

4.      On information and belief, Defendant Tristar Products, Inc. is a corporation organized and existing under the laws of Florida, having a principal place of business at 1293 North University Drive, Coral Springs, Florida 33071.

5.      On information and belief, Tristar may be served through its registered agent for service, C T Corporation System located at 1200 South Pine Island Road, Plantation, Florida 33324.

6.      On information and belief, Defendant Emeril Lagasse is an individual who resides in this District  and has a place of business at 829 St. Charles Ave., New Orleans, Louisiana 70130.  On information and belief, Mr. Lagasse also owns and operates the "Emeril's Coastal Italian" restaurant in this District at 435 Grand Boulevard, Miramar Beach, FL, 32550.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over SharkNinja's patent infringement claim pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.      This Court has personal jurisdiction over Defendants because, upon information and belief, each Defendant conducts business in this District and Tristar distributes products within the State of Florida.   Defendants have further purposefully availed themselves of the opportunity to conduct commercial activities in this forum and have committed acts of patent infringement in this District as alleged in this Complaint.

9.      This Court also has personal jurisdiction over Tristar because, upon information and belief, Tristar has a principal place of business in this District.

10.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, upon information and belief, this is a judicial district where Defendants have committed acts of patent infringement as alleged in this Complaint, and this is a judicial district where Tristar has a regular and established place of business.

11.      Defendants, upon information and belief, have used, sold, imported and/or offered for sale products that infringe SharkNinja's patents in this District, including at least the "Emeril Lagasse Pressure AirFryer" product.

2

### PLAINTIFF SHARKNINJA

12.     Plaintiff SharkNinja is a worldwide leader and innovator in the housewares industry.  It offers more than 150 products that include vacuum cleaners and kitchen appliances, and has a rich history of providing "five star" products to consumers at affordable prices.

13.     SharkNinja devotes significant resources to its research and development, which has resulted in, among other things, development of innovative products and product features. Indeed, SharkNinja's efforts have resulted in development of its Ninja® kitchen appliances that are well known for their quality, ease of use, and innovative technology.  These include, but are not limited to, the Ninja® Coffee bar, Ninja® Intelli-Sense Kitchen System, Ninja® Ultra Prep™ Blender and Food Processor, Ninja Chef™ Blender, Ninja® Blender DUO® Vacuum Blender, and Foodi™ products.  SharkNinja's efforts have also resulted development of its innovative Shark® cleaning products including, but not limited to, the Shark IQ Robot™ Vacuum, Shark ION™ Robot Vacuum, Shark® Rotator® Vacuum, Shark® Rocket® Vacuum, Shark Navigator® Vacuum, Shark® Genius® Steam Mops and Shark® Lift-Away® Pro Steam Pocket® Mop.

14.     SharkNinja's innovative products are sold by retailers as well as through direct marketing to consumers through the use of infomercials and on the Internet.

### THE NINJA® FOODI®

15.     SharkNinja has invested heavily in researching and developing its Ninja® Foodi® kitchen appliance "(Foodi®)" that functions as a pressure cooker and air fryer.   SharkNinja recognized that pressure cookers and air fryers were gaining popularity with consumers. Pressure cookers were known for their cooking speed (e.g., 70% faster than traditional cooking methods) and one-pot cooking which makes cleanup simple and easy.  While pressure cookers offered speed and convenience, they were also viewed as limited in a way because they often

required an additional cooking step to "crisp" the food in a different product before it was served.  Air fryers, on the other hand, were viewed as fast, convenient and healthy in that they provided the benefit of 75% less fat versus traditional frying methods but lacked the ability to perform the "wet" cooking functions offered by appliances such as pressure cookers and slow cookers.  SharkNinja recognized the need for a single product that could perform both functions, and synthesized these ideas in a way never done before into a single, novel and unique product— the Ninja® Foodi®.

16.     The Foodi® was first released in or around September 2018 and was sold through retailers including, but not limited to, Walmart, Best Buy, Bed Bath and Beyond, Sam's Club, Kohl's, Target, Costco and Amazon.

17.     At the time of the Foodi®'s first release, there was no comparable product on the market, and it was widely considered a revolutionary appliance that quickly became popular in kitchens across the United States.  Advertised and widely known by its slogan as "**the pressure cooker that crisps**,"[1] as shown below, the Foodi® was the first appliance of its kind to offer users the ability to cook food using both pressure cooking and air frying in a single pot.

---

[1]   SharkNinja has registered this slogan on the U.S. Patent & Trademark Office's Supplemental Register.  *See*  Reg. No. 5671759.



18.     After its release, the Foodi® flew off the shelves.  Indeed, the product was so popular that SharkNinja had a hard time keeping enough product on store shelves to keep up with the demand, and it sold out at many retailers.  The Foodi® quickly garnered attention on a variety of social media, including posts on platforms such as Instagram, Facebook, and Twitter noting that it was the "hot item" of the season, that it was "sold out everywhere," and that purchasers were "in love" with the product.  Consumers waited in line for hours across the United States just to have the opportunity to purchase the product.

19.     Since its release, the popularity of the Foodi® has only increased, and the product has received numerous awards and accolades, including being named as:

- one of the 23 best new products released in 2018 by Business Insider;

- one of the best pressure cookers of 2019 by Digital Trends;

- one of the 15 perfect Mother's Day gifts by PopSugar;

- one of the best prime day deals by Yahoo;

- one of the top 10 kitchen deals for prime day by MyRecipes;

- a top 5 gift for mothers who like to cook by Consumer Reports;

- one of the best multi-cookers of 2019 by Consumer Reports;

- one of the 15 favorite gadgets and gear by Tech Crunch;

- a "genius pressure cooker and air-fryer hybrid" by CNET;

- the "only prime day sale you need to know about" by HuffPost;

- one of the top 3 air fryers by The Spruce;

- a top thoughtful gift for mom by Mental Floss;

- one of the best pressure cookers on Amazon by NY Mag;

- a top tech gift that dad really wants for Father's Day by Reader's Digest;

- a top 15 wedding gift idea by Your Tango;

- one of the best 5 air fryers for healthy food by Good Housekeeping;

- a kitchen essential for making you feel like a professional chef by Chow Hound;

- one of the only prime deals actually worth your money by Detroit Free Press;

- one of the best prime day deals by Chicago Sun-Times;

- one of the best electric pressure cookers to buy by Eating Well;

- one of the best gifts for foodies by Rachael Ray Everyday Magazine;

- one of the best slow cookers for busy parents by Fatherly;

- one of the 7 best electric pressure cookers by Fatherly;

- one of the top 50 thoughtful gift ideas for everyone by Parade;

- one of the 9 kitchen gadgets that make great gifts by Techlicious;

- one of the 6 best one-pot kitchen appliances for working moms;

- one of the 5 best air fryers on the market today by Money INC;

- one of the hottest kitchen appliance gifts for Christmas by Cleveland19;

- one of the best slow cookers for busy parents by Yahoo;

- one of the best pressure cookers to save time and money by KGUN 9;

- one of the best prime day kitchen gadgets by USA Friday;

- one of the 3 multi-tasking appliances that take the headache out of cooking by TheListTV.com;

- one of the ultimate Father's Day gifts by Busted Wallet;

- one of the best air fryers to deliver fried food with a less calories by F3; and

- Named as a top 10 gadget and gift idea by QuintDaily.

20.     The Foodi® has also garnered significant press coverage by media outlets including Business Insider, CNET, USA Today, CNBC, HuffPost, AOL, Digital Trends, The Daily Beast, Mashable, Yahoo!, PopSugar, Cooking Light, Good Housekeeping, Reader's Digest, Costco, Runner's World, Fatherly, Motherly, Popular Science, and PC Magazine. Additionally, in the last 15 months alone, it has garnered an average online rating of 4.73 out of 5 stars.[2]

21.     The popularity of the Foodi® in the United States and worldwide quickly established the market for tabletop cooking appliances that combine the functions of pressure cooking and air frying, two fundamentally different types of cooking modalities.  This market did not exist previously, and as a result of the success of the Foodi®, SharkNinja continues to invest heavily in further research and development, as well as advertising and marketing the product.

22.      Ninja® currently offers multiple versions of the Foodi®, each of which vary in size and functionality.  An exemplary version of the Foodi® is illustrated below:

---

[2]  This is based on over 3,000 reviews compiled by Clarabridge.



23.     SharkNinja's research and development work resulted in the issuance of numerous United States patents, including U.S. Patent No. 10,390,656; U.S. Patent No. 10,413,121; and U.S. Patent No. 10,413,122 (collectively, the "Asserted Patents").  Copies of these patents are attached as Exhibits 1, 2, and 3.  These three patents are only a small slice of SharkNinja's intellectual property portfolio, which includes over 500 issued patents in the United States and over 900 issued patents worldwide.

## DEFENDANTS' INFRINGING PRODUCT

24.     Upon information and belief, Defendant Tristar sells products through a variety of channels, including through the "direct to consumer industry" channel.  This is often referred to as the "As-Seen-On-TV" industry, and includes disseminating infomercials related to a variety of products in a variety of markets.  Upon information and belief, Tristar also sells through other channels including retail and online channels.

25.     One of the products sold by Tristar is the "Emeril Lagasse Pressure AirFryer" product[3] ("Infringing Product"), which it markets under its slogan "**the pressure cooker that air fries**," as shown below:



26.     Upon information and belief, Defendants' use, offers to sell, importation and sale of the Infringing Product is intended to capitalize on the market created by the success of the Ninja® Foodi®.  Indeed, Defendants introduced the Infringing Product to market approximately one year after the Foodi® was released and only after the enormous success and acclaim that the Foodi® generated.  Notably, consumers quickly began to recognize the Infringing Product as a "copycat" of the Foodi®.

27.     Tristar imports, offers to sell and sells the Infringing Product nationally using, for example, infomercials appearing on national television, Internet advertisements, and in-store displays.  Upon information and belief, these offers for sale and sales are made across the United States, including offers for sale and sales in this District, including for example at Walmart at

---

    [3]  *See, e.g.*, https://emerilpressureairfryer.com (last accessed October 3, 2019).

8400 Coral Way, Miami, FL 33155.  Upon information and belief, these offers for sale and sales have occurred, and continue to occur, since the issuance of the Asserted Patents.

28.     Upon information and belief, Mr. Lagasse has contracted with Tristar for Mr. Lagasse to appear in infomercials and advertisements endorsing, using, and offering to sell the Infringing Product.  This includes, for example, utilizing Mr. Lagasse's name in the name of the Infringing Product, but also utilizing Mr. Lagasse's name and likeness in advertising materials, including in infomercials, in online advertisements, in packaging materials, and on in-store displays, as illustrated for example below:





29.     Upon information and belief, Mr. Lagasse has used and continues to use the Infringing Product.

30.     Upon information and belief, Mr. Lagasse's ongoing appearances in Tristar's infomercials, online advertisements, packaging materials, and in-store displays is intended to actively encourage and induce distributors, customers, and/or end-users to purchase and use the Infringing Product.

31.     Defendants' desire to capitalize on the success of the Foodi® is illustrated not only by the timing of its release and its infringement of the Asserted Patents, as discussed below, but also by the similarities between its advertisements and SharkNinja's advertisements for the Foodi®.  Upon information and belief, Defendants have also deliberately placed the Infringing Product in close proximity to the Foodi® within many of the same retail stores.

32.     For example, as noted above, SharkNinja has registered the slogan "**the pressure cooker that crisps**" and uses the slogan in marketing the Foodi®.  Indeed, this slogan is front and center in the Foodi® marketing materials and exemplifies one of the most novel and

innovative features of the Foodi® (*i.e.*, the fact that it is the only multi-mode kitchen appliance capable of both pressure cooking and air frying food in a single device). Defendants' use the slogan "**the pressure cooker that air fries**" in its advertisements and infomercials for the Infringing Product and use similar retail displays, as illustrated below:



**Ninja® Foodi™**



**Infringing Product**



**Ninja® Foodi™**



**Infringing Product**

Upon information and belief, Defendants' use the slogan "**the pressure cooker that air fries**" and similar retail displays in an effort to mimic the look of SharkNinja's advertising and to capitalize on the success of the Foodi® by leading consumers to believe the Infringing Product is associated with Ninja® and its Foodi® product. Upon information and belief, Defendants' use this slogan in an effort to lead consumers to believe that the Infringing Product is the only

product on the market that combines the functionalities as unique and novel as the Foodi®.

33.     As another example, aspects of Defendants' nationally-televised infomercial for the Infringing Product very closely mimic aspects of SharkNinja's national advertising materials for the Foodi®, including for example the animations used in SharkNinja's advertising materials to illustrate how the Foodi® operates:



**Ninja® Foodi™**                    **Infringing Product**

Upon information and belief, Defendants' mimicking of SharkNinja's advertising materials is an effort to capitalize on the success of the Foodi® by leading consumers to believe the Infringing Product is associated with Ninja® and its Foodi® product.

34.     Defendants' actions discussed herein, including their advertisements for and importation, use, offers to sell, and sales of the Infringing Product, are intended to steal market share and sales away from Ninja® and its Foodi® product. These actions are causing irreparable harm to SharkNinja's reputation, goodwill, and market leadership position.

**SHARKNINJA'S ASSERTED PATENTS**

35.     Defendants' Infringing Product infringes at least the following patents, which SharkNinja has asserted in this lawsuit:  U.S. Patent No. 10,390,656; U.S. Patent No. 10,413,121; and U.S. Patent No. 10,413,122.

36.     On August 27, 2019, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 10,390,656 ("the '656 patent"), entitled "Cooking Device and Components Thereof."

37.     The '656 patent was duly assigned to SharkNinja, which is the assignee of all right, title, and interest in and to the '656 patent and possesses the exclusive right of recovery for past, present, and future infringement.  Each and every claim of the '656 patent is valid and enforceable.  A true and correct copy of the '656 patent is attached hereto as Exhibit 1.

38.     On September 17, 2019, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 10,413,121 ("the '121 patent"), entitled "Cooking Device and Components Thereof."

39.     The '121 patent was duly assigned to SharkNinja, which is the assignee of all right, title, and interest in and to the '121 patent and possesses the exclusive right of recovery for past, present, and future infringement.  Each and every claim of the '121 patent is valid and enforceable.  A true and correct copy of the '121 patent is attached hereto as Exhibit 2.

40.     On September 17, 2019, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 10,413,122 ("the '122 patent"), entitled "Cooking Device and Components Thereof."

41.     The '122 patent was duly assigned to SharkNinja, which is the assignee of all right, title, and interest in and to the '122 patent and possesses the exclusive right of recovery for

past, present, and future infringement.  Each and every claim of the '122 patent is valid and

enforceable.  A true and correct copy of the '122 patent is attached hereto as Exhibit 3.

**COUNT ONE: INFRINGEMENT OF**
**U.S. PATENT NO. 10,390,656**

42.     SharkNinja re-alleges and incorporates by reference Paragraphs 1–41 above, as if

fully set forth herein.

43.     Defendants have been and are now directly infringing the '656 patent by making,

using, selling, and/or offering for sale in the United States and/or importing into the United

States the Infringing Product which practices or embodies at least claims 1 and 9 of the '656

patent.  Defendants are therefore liable for direct infringement of the '656 patent under 35 U.S.C.

§ 271(a).

44.     For example, the Infringing Product is a cooking system for cooking food.  As

noted on the website for the Infringing Product (https://emerilpressureairfryer.com/), the

Infringing Product is a device that cooks by both pressure cooking and air frying, among other

modalities, and is designed to "replace[] 12 [a]ppliances," and has the ability to "pressure cook,

air fry, slow cook, bake, roast, steam & more:"





45.     For example, the Infringing Product comprises a housing defining a hollow chamber configured to receive a food container, said housing having an upper portion defining an opening to said hollow chamber, as shown below:





46.     For example, the Infringing Product comprises a food container having a hollow container interior and being positionable within said hollow chamber, wherein an end of said food container extends above said upper portion of said housing when said container is installed within said hollow chamber, as shown below:

17



47.    For example, the Infringing Product comprises a first lid (*e.g.*, an "air frying lid") attachable to said housing and moveable between a first position that covers said upper portion of said housing and said opening to said hollow chamber when said food container is installed within said hollow chamber and a second position where said first lid does not cover said opening to said hollow chamber, as shown below:






18

48.    For example, the Infringing Product comprises a second lid (*e.g.*, a "pressure cooking lid") attachable to said housing to cover said upper portion of said housing and said opening to said hollow chamber, as shown below:






49.    For example, the Infringing Product comprises a second lid (*e.g.*, a "pressure cooking lid") configured to seal against and about said end of said food container, sealing said hollow container interior when said food container is installed within said hollow chamber, as shown below:



 

     50.    For example, the Infringing Product comprises at least one heating element disposed in said first lid, as shown below:



**Air Frying Lid**
Turbo Fan creates a whirlwind of super heated air. Get a crispy, crunch, golden-brown finish

51.    Upon information and belief, Defendants have also been and are now indirectly infringing at least claims 1 and 9 of the '656 patent.

52.    Upon information and belief, Defendants have knowledge of the '656 patent at least as of the filing of this Complaint and have been and are now actively inducing others, including their distributors, customers, and/or end-users who use, sell or offer to sell the Infringing Product, to directly infringe at least claims 1 and 9 of the '656 patent.

53.    Upon information and belief, Tristar provides and continues to provide manuals, training, guides, videos and/or demonstrations that induce its distributors, customers, and/or end-users to perform acts intended by Tristar to directly infringe the '656 patent.  Tristar is therefore liable for inducing infringement of the '656 patent under 35 U.S.C. § 271(b).

54.    Upon information and belief, Mr. Lagasse appears on nationally-televised infomercials, in online advertisements,[4] and in retail stores and actively encourages and continues to encourage distributors, customers, and/or end-users to perform acts intended by Mr.

---

[4] *See, e.g.*, https://emerilpressureairfryer.com (last accessed October 3, 2019).

Lagasse to directly infringe the '656 patent. Mr. Lagasse is therefore liable for inducing infringement of the '656 patent under 35 U.S.C. § 271(b).

55.     Upon information and belief, Tristar has knowledge of the '656 patent at least as of the filing of this Complaint and has been and is now contributing to infringement of at least claims 1 and 9 of the '656 patent by others, including its distributors, customers, and/or end-users. Upon information and belief, Tristar contributes to such infringement by providing and continuing to provide the Infringing Product to its distributors, customers, and/or end-users, which is specially made or adapted for use in a manner that infringes the '656 patent and is not a staple article of commerce suitable for substantial non-infringing use.

56.     Upon information and belief, Tristar has knowledge of the fact that the Infringing Product is specially made or adapted for use to infringe the '656 patent and is not a staple article of commerce suitable for substantial non-infringing use. Tristar is therefore liable for contributory infringement of the '656 patent under 35 U.S.C. § 271(c).

57.     Upon information and belief, Defendants' infringement of the '656 patent is willful and deliberate, at least as of the filing of this Complaint, entitling SharkNinja to the recovery of increased damages under 35 U.S.C. § 284. Defendants have infringed and continue to infringe the '656 patent despite the risk of infringement being either known or so obvious that it should have been known to Defendants.

58.     By their actions, Defendants' infringement of the '656 patent has irreparably injured SharkNinja. Unless such infringing acts are enjoined by this Court, SharkNinja will continue to suffer additional irreparable injury. SharkNinja has no adequate remedy at law.

59.     By their actions, Defendants' infringement of the '656 patent has damaged, and continues to damage, SharkNinja in an amount yet to be determined, or at least a reasonable royalty and/or lost profits that SharkNinja would have made but for Defendants' infringing acts.

**COUNT TWO: INFRINGEMENT OF**
**U.S. PATENT NO. 10,413,121**

60.     SharkNinja re-alleges and incorporates by reference Paragraphs 1–59 above, as if fully set forth herein.

61.     Defendants have been and are now directly infringing the '121 patent by making, using, selling, and/or offering for sale in the United States and/or importing into the United States the Infringing Product which practices or embodies at least claim 1 of the '121 patent. Defendants are therefore liable for direct infringement of the '121 patent under 35 U.S.C. § 271(a).

62.     For example, the Infringing Product is a cooking system for cooking food, the cooking system being functional in a plurality of cooking modes.  As noted on the website for the Infringing Product (https://emerilpressureairfryer.com/), the Infringing Product is a device that cooks by both pressure cooking and air frying, among other modalities, and is designed to "replace[] 12 [a]ppliances," and has the ability to "pressure cook, air fry, slow cook, bake, roast, steam & more:"





63.     For example, the Infringing Product comprises a housing defining a hollow chamber configured to receive a food container, said housing having an upper portion defining an opening to said hollow chamber, as shown below:





64.     For example, the Infringing Product comprises a first lid (*e.g.*, an "air frying lid") adapted to cover said opening to said hollow chamber, the cooking system operating in an air frying mode when said first lid covers said opening to said hollow chamber, as shown below:



**Air Frying Lid**
Turbo Fan creates a whirlwind of super heated air. Get a crispy, crunch, golden-brown finish






65.     For example, the Infringing Product comprises at least one heating element associated with at least one of said housing and said lid, as shown below:



**Air Frying Lid**
Turbo Fan creates a whirlwind of super heated air. Get a crispy, crunch, golden-brown finish

66.    For example, the Infringing Product comprises a second lid (*e.g.*, a "pressure cooking lid") adapted to cover said opening to said hollow chamber and including a locking feature for locking said second lid to said housing, the system operating in conductive mode when said second lid covers said opening to said hollow chamber, as shown below:



**Pressure Cooking Lid**
Hyper-pressurized Environement infuses liquid & moisture into food for tender, juicy results.









67.     Upon information and belief, Defendants have also been and are now indirectly infringing at least claim 1 of the '121 patent.

68.     Upon information and belief, Defendants have knowledge of the '121 patent at least as of the filing of this Complaint and have been and are now actively inducing others, including their distributors, customers, and/or end-users who use, sell or offer to sell the Infringing Product, to directly infringe at least claim 1 of the '121 patent.

69.     Upon information and belief, Tristar provides and continues to provide manuals, training, guides, videos and/or demonstrations that induce its distributors, customers, and/or end-users to perform acts intended by Tristar to directly infringe the '121 patent.  Tristar is therefore liable for inducing infringement of the '121 patent under 35 U.S.C. § 271(b).

70.     Upon information and belief, Mr. Lagasse appears on nationally-televised infomercials, in online advertisements[5], and in retail stores and actively encourages and continues to encourage distributors, customers, and/or end-users to perform acts intended by Mr. Lagasse to directly infringe the '121 patent.  Mr. Lagasse is therefore liable for inducing infringement of the '121 patent under 35 U.S.C. § 271(b).

---

[5] *See, e.g.*, https://emerilpressureairfryer.com (last accessed October 3, 2019).

71.     Upon information and belief, Tristar has knowledge of the '121 patent at least as of the filing of this Complaint and has been and is now contributing to infringement of at least claim 1 of the '121 patent by others, including its distributors, customers, and/or end-users. Upon information and belief, Tristar contributes to such infringement by providing and continuing to provide the Infringing Product to its distributors, customers, and/or end-users, which is specially made or adapted for use in a manner that infringes the '121 patent and is not a staple article of commerce suitable for substantial non-infringing use.

72.     Upon information and belief, Tristar has knowledge of the fact that the Infringing Product is specially made or adapted for use to infringe the '121 patent and is not a staple article of commerce suitable for substantial non-infringing use.  Tristar is therefore liable for contributory infringement of the '121 patent under 35 U.S.C. § 271(c).

73.     Upon information and belief, Defendants' infringement of the '121 patent is willful and deliberate, at least as of the filing of this Complaint, entitling SharkNinja to the recovery of increased damages under 35 U.S.C. § 284.  Defendants have infringed and continue to infringe the '121 patent despite the risk of infringement being either known or so obvious that it should have been known to Defendants.

74.     By their actions, Defendants' infringement of the '121 patent has irreparably injured SharkNinja.  Unless such infringing acts are enjoined by this Court, SharkNinja will continue to suffer additional irreparable injury.  SharkNinja has no adequate remedy at law.

75.     By their actions, Defendants' infringement of the '121 patent has damaged, and continues to damage, SharkNinja in an amount yet to be determined, or at least a reasonable royalty and/or lost profits that SharkNinja would have made but for Defendants' infringing acts.

## COUNT THREE: INFRINGEMENT OF
## U.S. PATENT NO. 10,413,122

76.     SharkNinja re-alleges and incorporates by reference Paragraphs 1–75 above, as if fully set forth herein.

77.     Defendants have been and are now directly infringing the '122 patent by making, using, selling, and/or offering for sale in the United States and/or importing into the United States the Infringing Product which practices or embodies at least claim 1 of the '122 patent. Defendants are therefore liable for direct infringement of the '122 patent under 35 U.S.C. § 271(a).

78.     For example, the Infringing Product is a cooking system for cooking food, the cooking system being functional in a plurality of cooking modes. As noted on the website for the Infringing Product (https://emerilpressureairfryer.com/), the Infringing Product is a device that cooks by both pressure cooking and air frying, among other modalities, and is designed to "replace[] 12 [a]ppliances," and has the ability to "pressure cook, air fry, slow cook, bake, roast, steam & more:"





79.     For example, the Infringing Product comprises a housing defining a hollow chamber configured to receive a food container, said housing having an upper portion defining an opening to said hollow chamber, as shown below:





80.     For example, the Infringing Product comprises a first lid (*e.g.*, an "air frying lid")
movable relative to said housing, as shown below:



 

81.     For example, the Infringing Product comprises a second lid (*e.g.*, a "pressure cooking lid") movable relative to said housing and separate from said first lid, as shown below:



 

82. For example, the Infringing Product comprises at least one heating element associated with said first lid, as shown below:



83.     For example, the Infringing Product comprises wherein in a first cooking mode of the plurality of cooking modes, said at least one heating element in said first lid is open to airflow between said at least one heating element and said hollow chamber, as shown below:



84.    For example, the Infringing Product comprises in a second cooking mode of said plurality of cooking modes, said at least one heating element in said first lid is closed off to airflow between said at least one heating element and said hollow chamber by said second lid, as shown below:



85.    Upon information and belief, Defendants have also been and are now indirectly infringing at least claim 1 of the '122 patent.

86.    Upon information and belief, Defendants have knowledge of the '122 patent at least as of the filing of this Complaint and have been and are now actively inducing others, including their distributors, customers, and/or end-users who use, sell or offer to sell the Infringing Product, to directly infringe at least claim 1 of the '122 patent.

87.    Upon information and belief, Tristar provides and continues to provide manuals, training, guides, videos and/or demonstrations that induce its distributors, customers, and/or end-users to perform acts intended by Tristar to directly infringe the '122 patent.  Tristar is therefore liable for inducing infringement of the '122 patent under 35 U.S.C. § 271(b).

88.     Upon information and belief, Mr. Lagasse appears on nationally-televised infomercials, in online advertisements[6], and in retail stores and actively encourages and continues to encourage distributors, customers, and/or end-users to perform acts intended by Mr. Lagasse to directly infringe the '122 patent.  Mr. Lagasse is therefore liable for inducing infringement of the '122 patent under 35 U.S.C. § 271(b).

89.     Upon information and belief, Tristar has knowledge of the '122 patent at least as of the filing of this Complaint and has been and is now contributing to infringement of at least claim 1 of the '122 patent by others, including its distributors, customers, and/or end-users. Upon information and belief, Tristar contributes to such infringement by providing and continuing to provide the Infringing Product to its distributors, customers, and/or end-users, which is specially made or adapted for use in a manner that infringes the '122 patent and is not a staple article of commerce suitable for substantial non-infringing use.

90.     Upon information and belief, Tristar has knowledge of the fact that the Infringing Product is specially made or adapted for use to infringe the '122 patent and is not a staple article of commerce suitable for substantial non-infringing use.  Tristar is therefore liable for contributory infringement of the '122 patent under 35 U.S.C. § 271(c).

91.     Upon information and belief, Defendants' infringement of the '122 patent is willful and deliberate, at least as of the filing of this Complaint, entitling SharkNinja to the recovery of increased damages under 35 U.S.C. § 284.  Defendants have infringed and continue to infringe the '122 patent despite the risk of infringement being either known or so obvious that it should have been known to Defendants.

---

[6] *See, e.g.*, https://emerilpressureairfryer.com (last accessed October 3, 2019).

92.     By their actions, Defendants' infringement of the '122 patent has irreparably injured SharkNinja.  Unless such infringing acts are enjoined by this Court, SharkNinja will continue to suffer additional irreparable injury.  SharkNinja has no adequate remedy at law.

93.     By their actions, Defendants' infringement of the '122 patent has damaged, and continues to damage, SharkNinja in an amount yet to be determined, or at least a reasonable royalty and/or lost profits that SharkNinja would have made but for Defendants' infringing acts.

## DEMAND FOR JURY TRIAL

94.     SharkNinja hereby demands trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

95.     WHEREFORE, SharkNinja prays that this Court:

A.      Enter judgment that Defendants have infringed the '656 patent, the '121 patent, and/or the '122 patent;

B.      Enter judgment that Defendants are jointly and severally liable for infringement of the '656 patent, the '121 patent, and/or the '122 patent;

C.      Enter an order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, and/or all persons acting in concert or participation with Defendants, from infringing the '656 patent, the '121 patent, and/or the '122 patent.

D.      Award SharkNinja its damages resulting from Defendants' patent infringement pursuant to 35 U.S.C. § 284, including its lost profits;

E.      Find that Defendants' patent infringement has been willful and increase the damages awarded to SharkNinja up to three times the amount assessed, pursuant to 35 U.S.C. § 284;

F.      Find this to be an exceptional case and award SharkNinja its attorneys' fees and costs, pursuant to 35 U.S.C. § 285;

G.      Award SharkNinja its prejudgment interest and post judgment interest on its damages, attorneys' fees, and costs; and

H.      Award SharkNinja such other and further relief as this Court deems just and proper, including but not limited to an accounting for pre-judgment infringements made but not otherwise awarded to SharkNinja.

Dated: October 4, 2019

Respectfully submitted:

HOMER BONNER JACOBS ORTIZ, PA
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, FL 33131
Tel: (305) 530-5100
Fax: (305) 372-2738

/s/Brian Lechich
Jose A. Ortiz
E-Mail: jortiz@homerbonner.com
Florida Bar No. 182321
Brian Lechich
E-Mail: blechich@homerbonner.com
Florida Bar No. 84419

and

GIBSON DUNN & CRUTCHER LLP

Brian A. Rosenthal
Wendy W. Cai
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Email: BARosenthal@gibsondunn.com
Email:  WCai@gibsondunn.com

Brian K. Andrea
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone:  (202) 955-8500
Email:  BAndrea@gibsondunn.com

*Pro hac vice motions to be filed*

**ATTORNEYS FOR PLAINTIFF SHARKNINJA OPERATING LLC**